JOSHUA D. HURWIT, IDAHO STATE BAR NO. 9527
UNITED STATES ATORNEY
DAVID J. MORSE, IDAHO STATE BAR NO. 10066
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF IDAHO
1290 WEST MYRTLE STREET, SUITE 500
BOISE, ID 83702
TELEPHONE: (208) 334-1211
FACSIMILE: (208) 334-9375

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>REED ALDEN SIDDOWAY,<br><br>Defendant. | Case No. 1:21-CR-00205-BLW<br><br>**GOVERNMENT'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNT TWO OF THE SUPERSEDING INDICTMENT** |

The United States of America, by and through Joshua D. Hurwit, United States Attorney, and the undersigned Assistant United States Attorney for the District of Idaho, hereby submits this memorandum in opposition to Defendant Reed Alden Siddoway's Motion to Dismiss Count Two of the Superseding Indictment (ECF #39). The Government opposes Defendant's Motion to Dismiss Count Two of the Superseding Indictment (Motion) and asks the Court to deny the Motion without a hearing.

**GOVERNMENT'S MEMORANDUM IN OPPOSTION TO DEFENDANT'S MOTION TO DISMISS COUNT TWO OF THE SUPERSEDING INDICTMENT - 1**

## FACTS

On August 4, 2000, Defendant pleaded guilty to possession of a controlled substance under Idaho Code § 37-2732(c), a crime punishable by imprisonment for a term exceeding one year.

On July 3, 2021, in Nampa, ID, Officers searched Defendant's pickup truck and seized over 107.6 grams of methamphetamine, a semi-automatic non-serialized personally manufactured AR-15 with five magazines, six .45 caliber handgun magazines, over three hundred (300) rounds of ammunition, and other miscellaneous items associated with the distribution of methamphetamine. Defendant was charged with knowingly and intentionally possessing fifty (50) grams or more of a mixture and substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B), and unlawfully possessing approximately 300 rounds of 5.56 caliber ammunition knowing he had been convicted of a crime punishable by imprisonment for a term exceeding one year in violation of 18 U.S.C. § 922(g)(1). On August 10, 2021, a grand jury indicted Defendant on a two-count indictment following related to the July 3, 2021, traffic stop.

On August 9, 2022, the Grand Jury returned a superseding indictment which charged the defendant with possession with intent to distribute fifty (50) grams or more of actual methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A), and unlawful possession of a firearm with principal component parts having been shipped and transported in interstate and foreign commerce, and the unlawful possession of approximately 300 rounds of 5.56 caliber ammunition knowing he had been convicted of a crime punishable by imprisonment for a term exceeding one year in violation of 18 U.S.C. § 922(g)(1).

**GOVERNMENT'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNT TWO OF THE SUPERSEDING INDICTMENT - 2**

Defendant now requests the Court dismiss Count Two of the superseding indictment. He claims that his conduct is "presumptively protected" under the Second Amendment due to a recent opinion filed by the Supreme Court in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022) (ECF #39). The Court should deny the defendant's motion because: (1) § 922(g)(1) regulates conduct that falls outside the scope of the Second Amendment; and (2) If it falls within the scope of the Second Amendment, the burden it imposes falls within the bounds of "the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id*. at 2127.

## ARGUMENT

**I.      Section 922(g)(1) imposes no burden on law-abiding citizens, the people who are afforded Second Amendment rights. Therefore, it regulates conduct that falls entirely outside the scope of the Second Amendment and it is presumptively constitutional.**

The Ninth Circuit Court of Appeals previously upheld the constitutionality of § 922(g)(1) by maintaining that § 922(g)(1) fell outside the scope of the Second Amendment. In *United States v. Vongxay*, 594 F.3d 1111, 1114-1115 (9th Cir. 2010), the Court noted that "[n]othing in *Heller* can be read to legitimately cast doubt on the constitutionality of § 922(g)(1)." The Court went on to include the *Heller* majority's opinion that:

> [t]he Constitution leaves the District of Columbia a variety of tools for combating [the problem of handgun violence in this country], *including some measures regulating handguns*.

*Id.* at 1115 (emphasis added) (internal citation omitted). The Court in *Vongxay* then referenced two statements from the *Heller* opinion that are dispositive in this case. The first was that Heller had the right to keep a firearm in his home for self-defense provided that he was "*not disqualified from the exercise of* [his] *Second Amendment right*." *Id*. (emphasis added). The

**GOVERNMENT'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNT TWO OF THE SUPERSEDING INDICTMENT - 3**

second was the Court's explanation in *District of Columbia v. Heller*, 128 S.Ct. 2783, 2816-2817

that addressed the manner by which such disqualification could occur:

> Like most rights, the right secured by the Second Amendment is not unlimited. From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose. … Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, *nothing in our opinion should be taken to cast doubt on the longstanding prohibitions on the possession of firearms by felons* and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and governing buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

(emphasis added).

The Court in *Vongxay* also stated that it was still bound by *United States v. Younger*, 398

F.3d 1179, 1192 (9th Cir. 2005) where it held that § 922(g)(1) does not violate the Second

Amendment rights of violent and non-violent convicted felons. *Vongxay* at 1116. Although the

reasoning upon which the decision in *Younger* was based was invalidated by *Heller* (that the

Second Amendment does not give individuals the right to bear arms), the Court in *Vongxay* was

still bound by the underlying decision in *Younger*. [1]

The analysis of § 922(g)(1) under the framework of *New York State Rifle & Pistol*

*Association, Inc. v. Bruen*, is consistent with the analysis the *Vongxay* Court undertook based on

*Heller*. Indeed, *Bruen* relied heavily on its analysis in *Heller*. Notably, the Court in *Bruen*

restated *Heller*'s position and reasserted that "the people" protected under the Second

Amendment are "ordinary, law abiding, adult citizens." *Bruen*, 142 S.Ct. at 2134. *See also*,

*McDonald v. City of Chicago, Ill*., 561 U.S. 742, 790 (2010).

---

[1] *See In re Osborne*, 76 F.3d 306, 309 (9th Cir. 1996) where the Court held that "[f]irst, a panel of this court may not overrule a decision of a previous panel; only a court *in banc* has such authority" and "[s]econd, the doctrine of *stare decisis* concerns the *holdings* of previous cases, not the rationales" (internal citations omitted).

**GOVERNMENT'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNT TWO OF THE SUPERSEDING INDICTMENT - 4**

In the instant case, Defendant stated that the Court in *Heller* noted that the Second Amendment right, as well as the First, Fourth, Ninth, and Tenth Amendments all apply to "the people." (ECF #39) *See Heller*, 554 U.S. at 580. The sum of Defendant's principal argument is that he – and by extension other individuals prohibited from possessing firearms under § 922(g)(1) – is a member of "the people" within the meaning of the Second Amendment. (ECF #39). He argues that consequently § 922(g)(1) is unconstitutional because it imposes a burden on his rights under the Second Amendment to bear, or in this scenario, possess, a firearm. (ECF #39). However, Defendant fails to complete the analysis under both *Heller* and *Bruen*. While Defendant may be both an ordinary citizen and an adult, he is not a law-abiding citizen.  His failure to meet that criterion excludes him, under both *Heller* and *Bruen*, from being a member of the class afforded Second Amendment rights – "the people." More pointedly, because § 922(g)(1) regulates the actions of non-law-abiding citizens – felons – it is not imposing any burden on the rights afforded to "the people" under the Second Amendment and therefore falls outside the scope of the Second Amendment. If this Court agrees, it need proceed no further.

II.     **In the alternative, if § 922(g)(1) falls within the scope of the Second Amendment, the burden it imposes falls within the bounds of "the historical tradition that delimits the outer bounds of the right to keep and bear arms."**

Although the scope analysis provides a definitive answer in this case, this memo proceeds to *Bruen's* historical analogue analysis. That analysis provides an alternative basis for holding § 922(g)(1) constitutional. Said differently, this section assumes that § 922(g)(1) somehow *does* fall within the scope of the Second Amendment.

The historical analogy test, and *Bruen's* two "central" metrics, reveal that § 922(g)(1) is constitutional because it is "consistent with this Nation's historical tradition of firearm regulation." *See id.* at 2126, 2133. "[A]nalogical reasoning requires only that the government

**GOVERNMENT'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNT TWO OF THE SUPERSEDING INDICTMENT - 5**

identify a well-established and representative historical *analogue*, not a historical *twin*." *Id.* at 2133. Specifically, historical restrictions on classes of people deemed to be dangerous or lacking in "virtue," provide a "well-established and representative historical *analogue*" to § 922(g)(1). *Id.*

At the time the Second Amendment was ratified, ". . . the right to arms [did] not preclude laws disarming the unvirtuous (i.e. criminals) or those who, like children or the mentally unbalanced, were deemed incapable of virtue."  Don B. Kates, Jr., *The Second Amend.: A Dialogue, Law & Comtemp. Probs.* 143, 146 (1986); *accord Vongxay*, 594 F.3d. at 1114. Violent criminals were not part of the virtuous citizenry.[2] In fact, denying felons the right to bear arms is consistent with the explicit purpose of the Second Amendment to maintain "the security of a free state." U.S. Const. amend. II; *see also Parker v. District of Columbia*, 478 F.3d 370, 399 (D.C. Circ. 2007) (holding that "[r]easonable restrictions also might be thought consistent with a 'well-regulated Militia,'" and noting that "felonious conduct" would render a person "unsuitable for service in the militia")[3]; *Vongxay* at 1117.

Legislatures also precluded gun ownership by other groups they deemed "untrustworthy." For example, the states precluded gun ownership by Catholics and by classes of people who refused to take oaths to the state, such as Quakers.  *See* Churchill, *Gun Regul.*, 25 Law & Hist. Rev. at 157-60.  They also precluded the bearing of arms by those deemed not to have white society's interests at heart, like Native Americans and slaves.  *See Nat'l Rifle Ass'n of Amer. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185, 194 (5th Cir. 2012); *Kanter v. Barr*, 919 F.3d 437, 457-58 (7th Cir. 2019) (Barrett, J., dissenting), majority decision

---

[2] Similarly, criminals fell outside the scope of the Fourteenth Amendment's protections of voting rights.  *See Richardson v. Ramirez*, 418 U.S. 24, 54, 56 (1974).
[3] Felons are often, and historically have been, explicitly prohibited from militia duty. *See, e.g.,* D.C. Code § 49-401(outlining current prohibition on felons in the militia) (Mar. 1, 1889, 25 Stat. 772, ch. 328, § 1.)

**GOVERNMENT'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNT TWO OF THE SUPERSEDING INDICTMENT - 6**

abrogated by *Bruen*, 142 S.Ct. at 2126-27; Robert H. Churchill, *Gun Regul., the Police Power, & the Right to Keep Arms in Early Am.: The Legal Context of the Second Amend.*, 25 Law & Hist. Rev. 139, 157-60; Joyce Lee Malcolm, *To Keep and Bear Arms* at 140-41 (1994).  Defendant's arguments rely on law from modern history, which *Bruen* disfavored.  *See Bruen*, 142 S. Ct. at 2136-37.

"In sum, founding-era legislatures categorically disarmed groups of people they judged to be a threat to the public safety."  *Kanter v. Barr*, 919 F.3d 437, 458 (Barrett, J., dissenting).  And they sometimes did so based on reasons and reasoning we would find significant fault with today.  *Id.* at n.7 (noting that exclusions based on race or religion would, of course, "be unconstitutional today"). That said, they did so in a similar manner and for a similar reason: protecting society from groups perceived to be dangerous by precluding those groups from bearing guns. Thus, they satisfy both of *Bruen*'s "central" metrics.  *See* 142 S. Ct. at 2133.

*Bruen's* first metric contemplates "whether modern and historical regulations impose a comparable burden on the right of armed self-defense." *Id.*  In the case of § 922(g)(1) and the historic statutes and analogues described, they do. As stated above, both modern and historical regulations precluded classes of people from keeping and bearing arms. The distinction in the instant case, however, is that § 922(g)(1) requires significant process before someone may be found to belong within the precluded class. *See* 18 U.S.C. § 921(a)(20)(A) (listing specific felonies excluded from the prohibition under § 922(g)(1)). It also outlines that a person may not be considered for this excluded class if their conviction was expunged, set aside, or if the individual was pardoned. *See* 18 U.S.C. § 921(a)(20). Ultimately, § 922(g)(1) carefully and precisely defines the class of people whose conduct it regulates, requires process, and allows for

**GOVERNMENT'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNT TWO OF THE SUPERSEDING INDICTMENT - 7**

the possibility that people may be removed from the precluded class. It is arguably more narrowly defined than founding-era statutes and analogues.

*Bruen's* second metric asks whether the modern and historic regulations are comparably justified. *Bruen*, 142 S. Ct. at 2133. In short, yes. Both modern and historic regulations were justified by legislative determinations regarding the dangerousness of a defined class. *See Kanter*, 919 F.3d at 458 (Barrett, J., dissenting).

In sum, if the Court reaches *Bruen's* historical analogue test, it too shows that § 922(g)(1) is constitutional. The statute falls within the "historical tradition that delimits the outer bounds of the right to keep and bear arms." *See Bruen*, 142 S. Ct. at 2127. In fact, § 922(g)(1) is narrower, more precise, and more justified than many analogous historic regulations.

**CONCLUSION**

This Court should deny Defendant's Motion because § 922(g)(1) is constitutional under *Bruen's* first inquiry regarding scope. *Bruen's* second inquiry involving historical analogies provides an alternative basis for denying Defendant's Motion.

Dated this 14th day of September, 2022.

JOSHUA D. HURWIT
United States Attorney
By:


*/s/ David J. Morse*
DAVID J. MORSE
Assistant United States Attorney

**GOVERNMENT'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNT TWO OF THE SUPERSEDING INDICTMENT - 8**

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 14, 2022, the foregoing **GOVERNMENT'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNT TWO OF THE SUPERSEDING INDICTMENT** was electronically filed with the Clerk of the Court using the CM/ECF system, and that a copy was served on the following parties or counsel by:

| | |
|---|---|
| Joshua Taylor<br>The Law Office of Joshua B. Taylor, PLLC<br>250 S. 5th Street, Ste. 850<br>Boise, ID 83702<br>joshuabtaylorlaw@gmail.com | ☐ United States Mail, postage prepaid<br>☐ Fax<br>☒ ECF filing<br>☐ Email |

*/s/ Mackenzie Nyland*
Legal Assistant

**GOVERNMENT'S MEMORANDUM IN OPPOSTION TO DEFENDANT'S MOTION TO DISMISS COUNT TWO OF THE SUPERSEDING INDICTMENT - 9**