**Joshua B. Taylor, ISB# 7301**
The Law Office of Joshua B. Taylor, PLLC
250 S. 5th St., Ste. 850
Boise, ID 83702
t: 208-336-1880
f: 208-429-1100
e: joshuabtaylorlaw@gmail.com

*Attorney for Reed Alden Siddoway*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO
(HONORABLE B LYNN WINMILL)

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>REED ALDEN SIDDOWAY,<br><br>    Defendant. | Case No: 1:21-CR-00205-BLW<br><br>**REPLY TO GOVERNMENT'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS "FIREARM" PORTION OF COUNT TWO** |

COMES NOW, Reed Siddoway, who hereby replies to the the Government's *Memorandum in Opposition to Defendant's Motion to Dismiss the "Firearm" Portion of Count Two*. Dkt. 62.

First, to be clear about the argument, Siddoway does not contend, in his *Motion to Dismiss*, that the assault rifle was not a "firearm" *at the time it was found in Idaho*. See Siddoway's *Motion to Dismiss "Firearm" Portion of Count Two*, Dkt. 57, p. 1. Rather, Siddoway argues that the "firearm," as that definition is appropriately applied, did not travel in or affect interstate commerce.

Second, the Government's argument conflates two separate types of "firearms" as one thing, specifically: a rifle, which meets the definition of "firearm" under 18 U.S.C. § 921(a)(3)(A) and/or (B), with a "destructive device" – such as a bomb, missile, or rocket, etc., which meets the definition of "firearm" under 18 U.S.C. § 921(a)(3)(D) *and which is further defined* under §

921(a)(4). The two items, a rifle and a bomb, are apples and oranges, both fruit (a firearm), but both different. The Government's argument mistakes oranges (bombs, Molotov cocktails, "destructive devices") for apples (an assault rifle), or "a weapon [that] may readily converted to expel a projectile"). *See* 18 U.S.C. § 921(a)(4) (a "destructive device" is a bomb, missile, etc.), and 18 U.S.C. § 921(a)(3)(A) (a firearm is "any weapon [that] may readily be converted to expel a projectile").

### ARGUMENT

A. <u>An assault rifle and a "destructive device" are not the same thing; and the Government's argument that "combined" parts can constitute a "firearm" after the fact for an assault rifle are relevant only to a "destructive device" – which the assault rifle is not</u>.

Only if the Government could show that the assault rifle in this case met the definition of a "firearm" *at the time it traveled in or affected interstate commerce* could the Government proceed on the "firearm" portion of the Superseding Indictment. The Government can only show that the above listed items: "the barrel, the bolt carrier group, the cam pin, and the firing pin," which do not constitute a "firearm", traveled in or affected interstate commerce. Dkt. 62, p.4.

The Government did not show in the testimony in either the Original and the Superseding Indictment that the assault rifle travelled in interstate commerce in the condition that it was found. That is to say, the Government being able to say that only the following parts of a weapon traveled in or affected interstate commerce: "the barrel, the bolt carrier group, the cam pin, and the firing pin", is not enough to prove that a "firearm" traveled in or affected interstate commerce because those parts cannot expel or readily be converted to expel a projectile under 18 U.S.C. §

921(a)(3)(A); and, as such, they do not meet the definition of a firearm (they are not a "receiver," subpart B, they are also not a muffler or silencer, subpart C, or a "destructive device", subpart D.

The Government confuses subpart A and B with subpart D and tries to make the argument that the assault rifle in this case should be counted as a "firearm" that traveled in or affected interstate commerce after the fact, relying upon the definition for "destructive device" found at subpart D. The Government uses subpart D, "destructive device," to argue that something that meets the definition of a firearm under subpart A traveled as a "firearm" at the time, because its "principal component parts" were later "combined" with parts that make the whole thing into a "firearm," and the parts that cannot be traced in interstate commerce are not "innocent." Dkt. 62, p. 3-4. The concept of "principal component parts" later "combined" with non-innocent parts only relates to "destructive devices."

As such, the Government's argument is misplaced because it relies upon a definition found in 18 U.S.C. § 921(a)(3)(D) and (a)(4) which apply to a "destructive device," rather than the definition found at 18 U.S.C. § 921(a)(3)(A) which applies to an assault rifle as a "firearm." The assault rifle found in this case is not a "destructive device." To be clear, both a "destructive device" and an assault rifle are "firearms" under § 921(a)(3), but they do not belong to the same class under that subsection. Like apples and oranges, both are fruit, but they are not the same and they are subject to different definitions and requirements for proving what makes them a "firearm."

A "destructive device" under 18 U.S.C. § 921(a)(3)(D) and as further defined in subsection 921(a)(4)(C) can *potentially* travel in or affect interstate commerce as a combination of parts. Government's Memorandum, Dkt. 62, citing *United States v. Verna*, 113 F.3d 499 (4th Cir. 1997) and *United States v. Wilder*, 2019 WL 224246 (D. Md. Jan. 15, 2019), at p. 3. But an assault rifle is not a "destructive device" and it is not defined under the same portion of the statute. In order

for an assault rifle to travel in or affecting interstate commerce, it must meet the definition of a "firearm" at the point in time when it travels in or affects interstate commerce.

The definitions of the four types of "firearm" at issue in this case are found at 18 U.S.C. § 921(a)(3), which defines a "firearm," and breaks what constitutes a "firearm" down into four separate definitions:

> (3) The term "firearm" means:
>
>> (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive;
>> (B) the frame or receiver of any such weapon;
>> (C) any firearm muffler or firearm silencer; or
>> (D) any *destructive device*. Such term does not include an antique firearm.

18 U.S.C.S. § 921 (emphasis added). "Destructive device" is then further defined in the next subsection, § 921(a)(4):

> (4) The term "*destructive device*" means—
>> (A) any explosive, incendiary, or poison gas—
>>> (i) bomb,
>>> (ii) grenade,
>>> (iii) rocket having a propellant charge of more than four ounces,
>>> (iv) missile having an explosive or incendiary charge of more than one-quarter ounce,
>>> (v) mine, or
>>> (vi) device similar to any of the devices described in the preceding clauses;
>
>> (B) any type of weapon (other than a shotgun or a shotgun shell which the Attorney General finds is generally recognized as particularly suitable for sporting purposes) by whatever name known which will, or which may be readily converted to, expel a projectile by the action of an explosive or other propellant, and *which has any barrel with a bore of more than one-half inch in diameter*; and
>
>> (C) *any combination of parts either designed or intended for use in converting any device into any destructive device* described in subparagraph (A) or (B) and from which a destructive device may be readily assembled.

(emphasis added). The assault rifle in this case does not meet the definition of a "destructive device." The rifle in this case does not qualify as a combination of parts that can be converted into a "destructive device" under subparagraphs (A) or (B) of that section (because it is not a bomb, grenade, rocket, missile, mine, or device similar; and it does not have a barrel with a bore of more than one-half inch in diameter). *Id.* It is in this subsection defining a "destructive device" (and not an assault rifle) where the "combination of parts" language relied upon by the Government is found and it is this definition that matters in *Verna* and *Wilder*. (supra.). The "destructive device" definition and *Verna* and *Wilder* do not apply here.

Regarding the rifle found in this case, for purposes of this Motion, the defense does not dispute that, at the time it was found in Idaho, it met the definition found in 18 U.S.C. § 921(a)(3)(A), where a "firearm" is defined as a weapon "which will or is [] readily convertible to expel a projectile." And while, for purposes of this Motion, the rifle was found in a condition where it was "readily convertible to expel a projectile," the Government has no evidence that it traveled in or affected interstate commerce *in this condition* – only that parts that cannot be counted as a "firearm" traveled in or affected interstate commerce.

In order to travel in or affect interstate commerce, the assault rifle must be in that condition which makes it a "firearm" under subsection 921(a)(3)(A) or (B) when it travels in or affects interstate commerce, otherwise it is not a "firearm." The barrel is not a "firearm," the bolt carrier group is not a "firearm," the cam pin is not a "firearm," the firing pin is not a "firearm." The Government cannot show that the assault rifle, assembled or ready to be assembled in a position to make it a "firearm" under the definition, in this case ever traveled in or affected interstate commerce as such – just the barrel, bolt carrier group, cam pin and firing pin, which, even if

shipped together – which the Government cannot show, are capable of "ready conversion to expel a projectile."

Even assuming the "upper" and "lower" receiver in this case constitute a "receiver" as that definition of "firearm" is found at 18 U.S.C. § 921(a)(3)(B), the Government cannot show that the "receiver" travelled in or affected interstate commerce. Dkt. 57, testimony of Agent Hipp, ("you can't do a nexus on a firearm that doesn't have any markings on it"), p. 2

In short, the Government's argument as found in both *Verna* and *Walker* applies only to a "destructive device" found under § 921 (a)(3)(D) – and not to the definition of a "firearm" under subparagraphs 921(a)(3)(A) or (B) that are applicable to this rifle. In *Verna*, the analysis is done completely under § 921 (a)(3)(D) – the portion that deals with a "destructive device." *Verna,* 113 F.3d at 502. In *Wilder* as well. 2019 U.S. Dist. LEXIS at 4. And in the third case the Government cites, *United States v. Walker*, 2004 U.S. Dist. LEXIS 19434, at 4 (D. Minn. Sep. 14, 2004). All of those cases deal with a bomb ("destructive device") of some sort, and none of those cases are applicable here because the assault rifle at issue is not a "destructive device" where "component parts" or combination thereof might be capable of establishing that something traveled in or affected interstate commerce after the fact.

    B.  <u>Siddoway's remaining claims: the changes to the ATF Regulations and Ex-Post Facto Concerns</u>.

The Government does not address the Defendant's ex post facto claims and the defense will not rehash this issue, nor does the Government argue that its superseding indictment is based on the changes in the ATF's regulatory rules; and further, although the Government takes a slight jab at the defense for lifting the history of the Regulatory and Statutory Background from *VanDerStok v. Garland*, 2022 WL 4009048 (N.D. Texas, 2022) "verbatim," the Government does

not dispute the Regulatory and Statutory Background put forth there. Dkt. 62, p. 5. The defense will also not rehash this issue.

Finally, in response to the Government's argument that *VanDerStok* is a civil case and not applicable – even though *VanDerStok* is a civil case, it is premised on the problem that shipping or receiving its items could result in *criminal* penalties. *VanDerStok v. Garland*, Civil Action No. 4:22-cv-00691-O, 2022 U.S. Dist. LEXIS 180398, at 12 (N.D. Tex. Oct. 1, 2022) (noting that individual plaintiffs "face a credible threat of criminal prosecution if they proceed with their intended purchases from Tactical Machining").

## CONCLUSION

In this case, the phrase that a thing is "greater than the sum of its parts" applies. The Collins Dictionary defines the phrase in the following manner:

> [I]f you say that something is more than the sum of its parts or greater than the sum of its parts, you mean that it is better than you would expect from the individual parts, because the way they combine adds a different quality.

Likewise, an assault rifle is not a "firearm" until its parts are combined – or are in such close proximity that the parts "may readily be converted to expel a projectile by the action of an explosive." 18 U.S.C. § 921(3)(A), definition of "firearm." In this case an assault rifle, once assembled, is greater than the separate parts, and the Government must show that the assault rifle, at the point in time where it traveled in or affected interstate commerce, was assembled or could be readily assembled into the condition that makes it greater than the sum of its parts – that is to say, in a condition that satisfied any of the definitions of "firearm" when it traveled in or affected interstate commerce. The government cannot do this and did not do it in either the Original or the Superseding Indictment testimony. Dkt. 57, Exh. 1 and 2.

Siddoway respectfully requests the Court dismiss the "firearm" portion of Count Two. Mr. Siddoway is not charged with possessing a "destructive device" that traveled in or affected interstate commerce, nor could he be.

Respectfully Submitted: October 14, 2022.

/s/ Joshua Taylor
Joshua B. Taylor

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 14, 2022, I caused to be served to the parties indicated below a true and correct copy of this document in the following manner:

United States Attorney's Office     [ X ] cm/ecf filing
David Morse
david.morse@usdoj.gov

/s/ Josh Taylor
Joshua B. Taylor