UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>REED ALDEN SIDDOWAY,<br><br>Defendant. | Case No. 1:21-cr-00205-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

### INTRODUCTION

The government's case against Defendant Reed Siddoway arises out of a traffic stop on July 3, 2021. An officer pulled Mr. Siddoway over after observing him fail to signal twice. After some conversation, Mr. Siddoway divulged that he was wanted for failure to comply. The officer ordered a warrant check and, while he waited for its completion, ran a drug-sniffing dog around Mr. Siddoway's vehicle. The dog alerted, creating probable cause to search the truck. During that search, law enforcement found ammunition and a personally manufactured AR-15 style rifle.

About a month later, on August 10, 2021, a grand jury returned a two-count indictment against Mr. Siddoway. *Indictment*, Dkt. 1. Count two charged him with

**MEMORANDUM DECISION AND ORDER - 1**

unlawfully possessing approximately 300 rounds of 5.56 caliber ammunition as a felon in violation of 18 U.S.C. § 922(g)(1). *Id.* On August 9, 2022, the grand jury returned a superseding indictment that incorporated an "AR-15 style rifle, bearing no serial number, with principal component parts having been shipped and transported in interstate and foreign commerce" into count two. *Superseding Indictment*, Dkt. 30. Mr. Siddoway now moves to dismiss the firearm portion of count two of the superseding indictment. *Motion,* Dkt. 57. For the reasons discussed below, the Court will deny the motion.

## DISCUSSION

Federal law makes it a crime for a felon to possess a firearm that travels in or affects interstate commerce. 18 U.S.C. § 922(g)(1). The statute further explains that "[t]he term 'firearm' means (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; [or] (B) the frame or receiver of any such weapon . . . ." 18 U.S.C. § 921(a)(3).

Mr. Siddoway's motion primarily focuses on § 921(a)(3)'s second definition—"the frame or receiver of any such weapon"—and the ATF's recent rulemaking interpreting that portion of the statute. *Motion*, Dkt. 57. He says that because the alleged crime occurred before the ATF's rulemaking, he could not

have violated the law by "possess[ing] a firearm with an upper and lower receiver that could not be proven to have traveled in interstate commerce." *Id.* at 6.

This argument misses the mark because § 921(a)(3)'s second firearm definition does not apply to this case. The government has not charged Mr. Siddoway with possessing the frame or receiver of a firearm. Rather, he is charged with possessing a fully compiled firearm "with principal component parts having been shipped and transported in interstate and foreign commerce." *Superseding Indictment,* Dkt. 30. Based on the superseding indictment, § 921(a)(3)'s first firearm definition governs the case. Accordingly, the ATF's recent interpretations of the other definition has no bearing on this case, including the constitutionality of the prosecution. Mr. Siddoway cannot prevail in his motion on that basis.

Mr. Siddoway refines his position in his reply brief, suggesting that to satisfy § 922(g)'s jurisdictional nexus requirement in his case, the government must show that the assault rifle was in a condition that met § 921(a)(3)'s first firearm definition when it traveled in or affected interstate commerce. *Reply*, Dkt. 68 at 5. To assess the merits of that argument, the Court looks to the definition of a firearm and the commercial activity that creates a jurisdictional nexus.

    A.    **The Firearm**

The Court begins with the text of the statute. As mentioned previously,

§ 921(a)(3) defines a firearm to include "(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device." Then, in defining "destructive devices," the statute begins with typical explosive devices such as bombs, grenades, and mines. § 921(a)(4)(A). The statue further provides that "destructive devices" *also* include "any combination of parts either designed or intended for use in converting any device into any destructive device described in subparagraph (A) or (B) and from which a destructive device may be readily assembled." § 921(a)(4)(C).

The statute thus gives two types of definitions for firearm. One definition, found in § 921(a)(3) and § 921(a)(4)(A)-(B), is for specific kinds of devices or parts of devices, such as a frame, receiver, muffler, or grenade. The other definition, which is only included in § 921(a)(4)(C), is the combination of parts to make such a device. Congress's decision to confine the combination of parts to the destructive device definition of firearm indicates a choice not to apply it to the other definitions. *See* Bryan Garner & Antonin Scalia, Reading Law 107 (2012) ("Negative-Implication Canon[:] The expression of one thing implies the exclusion of others (*expression unius est exclusion alterius*)"). In other words, a combination

MEMORANDUM DECISION AND ORDER - 4

of parts that can be used to make a firearm as defined in § 921(a)(3)(A) is not itself a firearm.

Applying this law to this case shows that the AR-15 style rifle is a firearm within § 921(a)(3)(A)'s definition, but the rifle's principal component parts are not. Indeed, the parties apparently agree on both points. With that established, the Court turns back to § 922(g).

### B. The Jurisdictional Nexus

The jurisdictional nexus of § 922(g) requires either a showing that the felon possessed "in or affecting commerce, any firearm or ammunition" or possessed "any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." That jurisdictional nexus element is "minimal" and "requires only . . . that the firearm have been, at some time, in interstate commerce.'" *United States v. Hanna,* 55 F.3d 1456, 1462 (9th Cir. 1995) (quoting *Scarborough v. United States,* 431 U.S. 563, 575 (1977)). In the vast majority of cases, the government establishes the jurisdictional nexus by showing that the firearm was manufactured in one state but possessed in another. In this case, however, the government alleges only that the "principal component parts" of the firearm were "shipped and transported in interstate and foreign commerce." *Superseding Indictment*, Dkt. 30.

Neither the Ninth Circuit nor Supreme Court have considered whether that kind of commercial activity is sufficient to establish a jurisdictional nexus. In the absence of controlling caselaw, the Court turns to the persuasive authority of the Second and Eighth Circuits. Unfortunately, those are the only circuit courts to have addressed the question[1] and their decisions are in direct conflict.

In *United States v. Travisano*, the Second Circuit affirmed the dismissal of a prosecution under § 1202—the predecessor of § 922(g)(1)[2]—because the government could not show that the firearm travelled in interstate commerce after its manufacture. 724 F.2d 341 (2nd Cir. 1983). Notably, in that case, the government "conced[ed] that it cannot prove that the shotgun travelled in interstate commerce" but urged the court "to rule that manufacture affecting commerce is a sufficient nexus." *Id.* at 347. The court rejected that reasoning, finding that the

---

[1] The government contends that the most relevant authorities are decisions from the Fourth and Fifth Circuit holding that § 922(g)(1)'s jurisdictional nexus is met when the component parts of a firearm have traveled in interstate commerce. *See United States v. Verna*, 113 F.3d 499 (4th Cir. 1997); *United States v. Gresham*, 118 F.3d 258, 265 (5th Cir. 1997). The Court finds these cases inapplicable. Both cases involved an explosive device and relied on the "combination of parts" definition of an explosive device found only in § 921(a)(4)(C). By comparison, the charges here do not involve an explosive device and the "combination of parts" language simply does not apply.

[2] The Ninth Circuit has held that the jurisdictional nexus requirements in § 922(g) and § 1202 have "the same meaning." *United States v. Sherbondy*, 865 F.2d 996, 1000 (9th Cir. 1988)

statute's legislative history and textual definition of firearms did not support it. *Id.* at 348. It also noted that such a definition would render the commerce requirement meaningless "since any convicted felon with a gun would be guilty of a federal crime without proof of nexus." *Id; see also United States v. Jones*, 16 F.3d 487, 492 (2d Cir. 1994) (citing *Travisano* and vacating a § 922(g)(1) conviction "[b]ecause the only evidence that the gun traveled in interstate commerce is the arbitrary inference that any gun found in New York must have been made outside New York").

In contrast, in *United States v. Mosby*, the Eighth Circuit held that ammunition assembled from component parts that traveled in interstate commerce established a jurisdictional nexus even though the ammunition itself was assembled and possessed in the same state. 60 F.3d 454, 457 (8th Cir. 1995); *see also United States v. Hill*, 835 F.3d 796, 800 (8th Cir. 2016) (affirming *Mosby*). The court rejected *Travisano*'s interpretation of the jurisdictional nexus element as "unjustifiably narrow" for two reasons,

> First, we reject *Travisano*'s construction of § 922(g)(1) that limits the commerce that Mosby's possession must be "in or affecting" to commerce in ammunition (or, as was the case in *Travisano*, firearms). Second, we reject *Travisano*'s exclusion of commerce in the component parts of the charged firearm or ammunition from the relevant commerce for purposes of determining whether the charged possession was "in or affecting commerce."

**MEMORANDUM DECISION AND ORDER - 7**

*Mosby*, 60 F.3d at 456; *see also Gresham*, 118 F.3d at 266 n.13 (declining to follow *Travisano* because that decision is "incompatible with the plain language of the statute").

Faced with this circuit split, the Court turns to the Supreme Court's decision in *United States v. Lopez*. In that case, the Supreme Court held 18 U.S.C. § 922(q) unconstitutional on Commerce Clause grounds. 514 U.S. 549, 561 (1995). The Supreme Court distinguished § 922(q) from § 1202—now § 922(g)—stating "§ 922(q) contains no jurisdictional element which would ensure, through case-by-case inquiry, that the firearm possession in question affects interstate commerce." *Id.* at 561. The same unconstitutional result follows if § 922(g)'s jurisdictional nexus provision merely requires that part of what eventually becomes a firearm travel at some time in interstate commerce. A jurisdictional nexus that broad obviates the need for case-by-case inquiry. As the Second Circuit rightly observed, the effect would be that any felon who possesses a gun commits a federal crime.

Analysis of the statutory text supports that conclusion. The statute carefully pairs jurisdictional nexus modifying clauses—"in or affecting commerce" and "which has been shipped or transported in interstate or foreign commerce"—with the nouns "any firearm or ammunition." 18 U.S.C. § 922(g). The statute only addresses activity that involves firearms and ammunition affecting commerce. And

**MEMORANDUM DECISION AND ORDER - 8**

the Court cannot ignore that firearm and ammunition have clear, specific statutory definitions. Because the principal component parts of firearms are not themselves a firearm, their affect on commerce is irrelevant. Accordingly, the Court concludes when a defendant is charged with possessing a firearm as defined in § 921(a)(3)(A), § 922(g) demands proof that the entire firearm moved in interstate or foreign commerce.

### C.   The Motion to Dismiss

With the jurisdictional nexus requirement clarified, the Court returns to Mr. Siddoway's motion to dismiss. Mr. Siddoway is right on the law. Possessing an "AR-15 style rifle, bearing no serial number, with principal component parts having been shipped and transported in interstate and foreign commerce" does not violate § 922(g)(1). *Superseding Indictment*, Dkt. 30. Because the "principal component parts" of an "AR-15 style rifle" are not a firearm, proving they moved in interstate commerce does not show a violation of § 922(g)(1).

However, Mr. Siddoway's motion falls short procedurally. The full portion of the superseding indictment alleges that Mr. Siddoway "did knowingly possess, in and affecting commerce, a firearm and ammunition, to wit: one AR-15 style rifle, bearing no serial number, with principal component parts having been shipped and transported in interstate and foreign commerce." *Superseding*

**MEMORANDUM DECISION AND ORDER - 9**

*Indictment*, Dkt. 30. The indictment properly alleges all the elements of a § 922(g)(1) charge—namely, that Mr. Siddoway, a convicted felon, possessed a firearm in and affecting commerce. For the purposes of this motion to dismiss, that is all that is necessary.

The problem is that Mr. Siddoway's motion is, at bottom, a factual claim. He argues that the evidence of jurisdictional nexus will be insufficient to sustain a conviction because the government will not be able to show that the entire firearm moved in interstate commerce. He may well be right about that. But that claim is appropriately brought in a Rule 29 motion for acquittal, not a motion to dismiss. Simply put, without seeing the government's evidence, the Court cannot make determinations about its sufficiency.

## ORDER

**IT IS ORDERED that:**

1. Defendant's Motion to Dismiss (Dkt. 57) is **DENIED**.

DATED: October 27, 2022

B. Lynn Winmill
U.S. District Court Judge